[Cite as *Stafford v. Stafford*, 2019-Ohio-3742.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Karren S. Stafford, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-50 |
| v. | : | (C.P.C. No. 16DR-4580) |
| Timothy W. Stafford, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 17, 2019

**On brief:** *Gregg R. Lewis,* for appellant.

**On brief:** *Jodelle M. D'Amico,* for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

NELSON, J.

{¶ 1} Plaintiff-appellant Karren S. Stafford doesn't like the spousal support determinations made by the Domestic Relations court, which ordered her ex-husband Timothy W. Stafford to pay her $800 a month for a period of eight years. She also doesn't like that court's decisions on attorney's fees (she doesn't get any further award there), or its decision to leave her with a student loan debt. Arguing that the Domestic Relations court abused its discretion in these areas, she appeals. Because we find that the Domestic Relations court did not abuse its authority in making these decisions, we affirm the judgment it reached.

{¶ 2} Ms. Stafford does not appear to take issue with any particular factual determination of the Domestic Relations court; what she objects to are the conclusions the court reached after assessing those facts. Both her opening brief and the judgment entry it challenges note that: when Ms. Stafford filed for divorce, she and her then-husband had

been married for more than 23 years; she was 51 years of age and he was 48; both of their surviving children already were emancipated; and she was earning $34,320 a year from Ohio Health, while he was earning $74,107 annually at the state Department of Corrections. *See* Appellant's Brief at 6-7; Dec. 27, 2018 Judgment Entry Decree of Divorce ("Decree") at 2-5.

{¶ 3} The Decree further notes that Ms. Stafford "testified that she had completed college coursework in both nursing and real estate but has failed to gain licensure." Decree at 4 (adding that Ms. Stafford "has not made herself ready to use the education she obtained" in either field); *see also id.* at 5 ("she has the necessary training and potential to increase her income and raise her standard of living").

{¶ 4} The Domestic Relations court also commented on a pattern of profligacy: Ms. Stafford's "financial mismanagement is a relevant factor that must be considered." *Id.* at 6. The court found, among other things, that Ms. Stafford had failed to pay credit card debt that she had been "ordered to pay in the temporary [court] orders"; that she had had her car repossessed twice for failure to make car payments; that she incurred thousands of dollars in checking overdraft fees; that "[s]he purchased a dog from Petland on a credit card when she wasn't able to meet her current obligations"; that she "purchased a treadmill on credit even when she wasn't paying her car payment"; that she budgeted $900 per month for food (including $400 monthly for "meals out," and "$250 [per month] for entertainment and hobbies and $325 for cell phones.") *Id.* at 6-7 and Plaintiff's Ex. 25.

{¶ 5} As summarized by the Domestic Relations court, Ms. Stafford "is able to work, * * * has additional skills that she is not using that would increase her income, * * * is receiving assistance through her ability to live in her parent's home, * * * is financially irresponsible and contributing to her inability to maintain her standard of living, and * * * has no health or mental conditions that limit her ability to work." *Id.* at 7.

{¶ 6} In addition to the spousal support payments of $800 per month for eight years, the Domestic Relations court awarded Ms. Stafford all of her 401(k) retirement account and social security benefits, plus $34,693 from her ex-husband's deferred compensation account, plus more than $50,000 from her ex-husband's state employee retirement account. *Id.* at 9-10. The Domestic Relations Decree also said that Ms. Stafford could keep her 2011 Harley Davidson motorcycle and Mr. Stafford could keep his 2004

Suzuki motorcycle; Mr. Stafford could retain his 2005 Chevy Silverado while surrendering a 1999 Dodge Ram pickup to the couple's daughter; and household property was to be divided equally. *Id.* at 8-9.

{¶ 7}   As to debts, the Domestic Relations court ordered Mr. Stafford to pay all listed marital debts (including, for example, a bank debt of $8,000) with one exception: Ms. Stafford had "incurred additional debt to purchase a dog when she was not paying the court ordered obligations [as she should have done. * * * Ms. Stafford] shall pay * * * Petland * * * any outstanding veterinary bills, dog license, or any other indebtedness associated with dog ownership." Further, Ms. Stafford is to pay the auto financing debt as previously ordered: "she allowed the car to be repossessed on two separate occasions while she is driving a car owned by her mother. * * * She had additional funds as [Mr. Stafford] was paying her rent and * * * the majority of the parties' marital debt during the pendency of the case." The court ordered the parties to pay their $419 Ohio tax debt equally. *Id.* at 10-12.

{¶ 8}   The Domestic Relations court did not order Mr. Stafford to pay additional attorney fees to Ms. Stafford, in part because of offsets from payments Mr. Stafford already had made on debts attributable to his ex-wife. Ms. Stafford had sought $5,216.67 in additional fees. She had squandered money, the Domestic Relations court said, that could have gone toward that expense. *Id.* at 12. "The Court further considered the amount of marital debt that [Mr. Stafford] will pay. It was not clear as to how much of the debt [he] had knowledge of as a lot was on credit cards. [He] further paid off a Best Buy credit card in the amount of $1,819.00 during the pendency of this action. Therefore, the Court finds that [Mr. Stafford] shall not pay any additional attorney fees due to paying the majority of all marital debt, the Best Buy Credit Card that [Ms. Stafford] was court ordered to pay, and [her] financial irresponsibility throughout the case." *Id.* Ms. Stafford was left "responsible for the balance of her attorney fees," while Mr. Stafford "will be responsible for his attorney fees." *Id.* Court costs were equally divided. *Id.* at 12.

{¶ 9}   For her first assignment of error, Ms. Stafford submits that "[t]he trial court erred, abused its discretion and ruled against the manifest weight of the evidence when it ruled that appellant is only entitled to spousal support in the amount of eight hundred dollars ($800.00) for a period of eight (8) years." Appellant's Brief at 8 (capitalization

adjusted). "This court reviews spousal support orders under an abuse of discretion standard," affording the trial court "wide latitude in deciding" such issues. *Wilkinson v. Wilkinson*, 10th Dist. No. 13AP-73, 2013-Ohio-3627, ¶ 4. Abuse of discretion " 'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "The appellate court must not substitute its judgment for that of the trial court when reviewing" under this standard. *Id.*

{¶ 10} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * * the court shall consider" 14 factors as specified by statute. R.C. 3105.18(C)(1). Here, the Domestic Relations court marched through each of those factors, explaining its assessment at every step. *See* Decree at 3-7; *compare, e.g., Kuper v. Halbach*, 10th Dist. No. 09AP-899, 2010-Ohio-3020, ¶ 50 (citations omitted) (trial court "need not comment on each of the R.C. 3105.18(C)(1) factors; rather, the record need only demonstrate that the court considered them in making its award"). Reviewing the decree in the context of the full record, we find no abuse of discretion.

{¶ 11} Citing to the Fifth District Court of Appeals in *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756 (5th Dist.), Ms. Stafford argues that the Domestic Relations court erred in limiting spousal support to a period of eight years despite the length of the marriage. But the divided court in *Hutta* confronted very different circumstances. There, the orthodontist ex-husband's salary was more than ten times the potential earnings of his homemaker spouse, and the couple apparently lived in considerable affluence. *Id.* at ¶ 2, 31. Here, the Domestic Relations court said and the record supports that "[b]oth parties testified that they lived paycheck to paycheck, had difficulty making ends meet and accumulated unsecured debt." Decree at 5.

{¶ 12} Moreover, both Staffords are employed, and their educational backgrounds seem reasonably comparable: Mr. Stafford has a college degree from Bluffton College, while Ms. Stafford has an Associate Degree in EMS Services, has taken Columbus State/COTC courses for a nursing degree (for which she has not yet completed the clinical requirements), and also has studied a "real estate curriculum through Hondros College" (although she has not yet passed the real estate agent licensing test). *Id.*; *see also id.* at 4

(observing that despite her various studies, Ms. Stafford "has not made herself ready to use the education she obtained" in the areas both of nursing and of real estate). The Domestic Relations court also found that "[t]here are numerous hospitals, nursing homes and assisted living institutions in the Columbus area where [Ms. Stafford] can become employed. She can retake her exam to become a licensed realtor" in a "lucrative" market. *Id.* at 6.

{¶ 13} Thus, Ms. Stafford's circumstances are in further contrast to those described in *Hutta*, where "[t]he evidence reflected an unlikelihood Appellant could develop a meaningful career outside the home," and where the ex-husband derived very "significant income" from property even beyond his orthodonture practice. 2008-Ohio-3756 at ¶ 41, 36.

{¶ 14} And, although Ms. Stafford posits that "[d]ue to the length of the marriage, [she] arguably is entitled to spousal support for an indefinite period of time," Appellant's Brief at 12, the *Hutta* case on which she relies was quick to acknowledge that precedent from the Supreme Court of Ohio does not "mandate" permanent spousal support simply because a marriage has been lengthy. *Id.* at ¶ 40 (referencing *Kunkle v. Kunkle*, 51 Ohio St.3d 64 (1990), and citing *Sears v. Sears*, 5th Dist. No. 2001CA00368, 2002-Ohio-4069, as "affirming denial of permanent spousal support in case involving thirty-four year marriage with both spouses in their mid-fifties").

{¶ 15} Indeed, while both Staffords neglected in their briefing to mention the further history in *Hutta*, the ultimate result there very much cuts against Ms. Stafford's position. The decision cited by Ms. Stafford returned the case to the trial court to reconsider among other things the limited duration of the spousal support award. On remand, the trial court limited spousal support to a period of 11 years. Upholding that determination, the Fifth District Court of Appeals found "no abuse of discretion in the eleven year duration of spousal support on remand." *Hutta v. Hutta ("Hutta II")*, 5th Dist. No. 10CAF040031, 2011-Ohio-3041, ¶ 43. *Hutta II* also underscored circumstances that further distinguish that situation from this: the "parties enjoyed a luxurious standard of living during the marriage," owned two residences including "a $5 million dollar Florida condominium," "lavished expensive gifts" on others, and the like. *Id.* at ¶ 3. Again, those are not circumstances reflected by the record here.

{¶ 16} The salient facts of *Hutta* do not obtain here, *Hutta II* held in any event that the lengthy marriage there did *not* necessitate a permanent or indefinite term of spousal support, and the Domestic Relations court on the very different facts of this case did not abuse its discretion by limiting the duration of spousal support to eight years (while retaining jurisdiction "to modify spousal support as to amount and term of payments" should adjustment be indicated, *see* Decree at 7, 8).

{¶ 17} Nor did the Domestic Relations court abuse its discretion by setting spousal support payments at $800 per month (as again subject to potential adjustment). Especially in light of Ms. Stafford's record of bounced checks, delinquent loan payments (or non-payments), and significant spending on discretionary items at a time when she was not making court-ordered payments, the Domestic Relations court was unwilling to accommodate Ms. Stafford's budgeting for expenditures on restaurants, entertainment and hobbies, and so forth. Decree at 7 ("While spousal support is appropriate, the amount must be commensurate with actual need," adding with regard to the circumstances here that "[t]he Court finds it is also inequitable to assign to a party an amount of spousal support that prohibits them from maintaining the same standard of living as the obligee of the payment"). The Domestic Relations court was influenced by Ms. Stafford's failure to follow through on the various lines of education that she had pursued, but that was not the sole element underpinning the court's determination; the Domestic Relations court did evaluate all of the factors specified by statute in reaching its spousal support determinations, and we are not at liberty to recalibrate its assessments simply because we might (or might not) have made different calculations in the first instance. We overrule Ms. Stafford's first assignment of error.

{¶ 18} For her second assignment of error, Ms. Stafford says that "[t]he trial court erred, abused its discretion by ruling that appellant was not entitled to receive attorney's fees from appellee." Appellant's Brief at 6 (capitalizations adjusted).

{¶ 19} Ohio law recites that: "In an action for divorce * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C.

3105.73(A). " 'An award of attorney fees is generally within the sound discretion of the trial court and not to be overturned absent an abuse of discretion.' " *Wilkinson*, 2013-Ohio-3627 at ¶ 14, quoting *Wagenbrenner v. Wagenbrenner*, 10th Dist. No. 10AP-933, 2011-Ohio-2811, ¶ 19 (further citation omitted).

{¶ 20} The Domestic Relations court does appear to have considered the statutorily prescribed factors. It took into account Mr. Stafford's earlier remittance toward Ms. Stafford's attorney fees, and it further noted that Ms. Stafford "could have used some of [the funds that the judge believed she had misspent] to pay for her attorney fees." It also noted that Mr. Stafford had paid off a credit card bill of $1,819 that Ms. Stafford had been "court ordered to pay." *See* Decree at 12; Tr. at 134-35. And while Ms. Stafford argues in replying to Mr. Stafford's brief that "it would be inequitable for the court to consider forcing her to sell her assets to continue to obtain adequate representation," Reply Brief at 7, that argument ignores both the judge's lengthy recitation of Ms. Stafford's financial mishaps and the award of various assets to her. Finding no abuse of discretion here either, we overrule Ms. Stafford's second assignment of error.

{¶ 21} Her final assignment of error is that the "trial court erred, abused its discretion by ruli[ng] that the Navient student loan debt was the sole responsibility of the Appellant." Appellant's Brief at 15 (capitalizations adjusted). Again, and as this assignment of error suggests, the "trial court has broad discretion in the allocation of marital assets and debt, and an appellate court will not disturb a trial court's judgment absent an abuse of discretion." *Lindsey v. Lindsey*, 10th Dist No. 15AP-733, 2016-Ohio-4642, ¶ 5 (citations omitted) (adding that the trial court "must divide marital property and debt equally or, if an equal division is inequitable, equitably").

{¶ 22} Here, Ms. Stafford cites to a case from the Ninth District Court of Appeals, *Polacheck v. Polacheck*, 9th Dist. No. 26551, 2013-Ohio-5788, in arguing that the allocation of student loan debt should " 'account for the unique facts and circumstances of the case,' " rather than simply assign the debt to the spouse perhaps presumed to benefit most directly from the debt-related education. Appellant's Brief at 15, citing *Polacheck* at ¶ 27. But the Domestic Relations court's debt allocation here must be considered in context, and appears to have accounted for what that court determined as the particular facts and circumstances of this case.

{¶ 23} First, the Domestic Relations court did not rest its judgment on a finding that Ms. Stafford had been the sole beneficiary of her enhanced education. Indeed, the court found that "neither party benefited from" the student loan debt. Decree at 5 (adding that "[s]he did not pass the real estate licensing exam, she did not complete her clinicals in nursing, and she has not been employed in the EMS field"); *see also id.* at 6 ("[b]oth parties testified that Defendant provided child care for the children while she attended classes"). And again, the Domestic Relations court in formulating its divisions of property and debt took notice of a variety of factors it found relevant and equitable, including its view that Ms. Stafford "is financially irresponsible" and had misspent money on a variety of other things. *See, e.g.,* Decree at 6-7 (enumerating extravagances).

{¶ 24} Moreover, the Decree did not otherwise divide the marital debts equally, but rather left responsibility largely with Mr. Stafford alone. Decree at 10-11. For what the Domestic Relations court classified as "marital debts," the court decreed that "[Mr. Stafford] shall pay and hold [Ms. Stafford] harmless on all marital debts listed," *id.* at 11, with the exception of the Petland debt related to Ms. Stafford's "purchase [of] a dog when she was not paying the court ordered obligations," *id.*, and a tax debt of $419 that the parties are to split, *id.* at 11-12. The marital debt for which Mr. Stafford alone is liable comes to some $15,000. *Id.* at 10-11. Ms. Stafford, meanwhile, is left with two further debts in excess of $110: the $23,548 in Navient student loans and an (unchallenged) auto finance loan of $4,365 for which she earlier had been "court ordered to make the payments * * * * [but on which she had] allowed the car to be repossessed on two separate occasions while she [was] driving a car owned by her mother." *Id.*

{¶ 25} Thus, we cannot say that the division of debts, including the student loan debt, was sufficiently incongruous with the facts of this particular case as to constitute an abuse of discretion. We overrule Ms. Stafford's third assignment of error.

{¶ 26} Having overruled Ms. Stafford's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BRUNNER and BEATTY BLUNT, JJ., concur.

———————————