[Cite as *Habtemariam v. Worku*, 2020-Ohio-3044.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Aster Habtemariam, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-47 |
| v. | : | (C.P.C. No. 16DR-146) |
| Abraha Worku, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 21, 2020

**On brief:** *Priya D. Tamilarasan*, for appellant. **Argued:**
*Priya D. Tamilarasan.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DORRIAN, J.

{¶ 1} Defendant-appellant, Abraha Worku, appeals the December 28, 2018 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a decree of divorce to appellant and plaintiff-appellee, Aster Habtemariam. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2} On January 15, 2016, appellee filed in the trial court a complaint for divorce. On February 11, 2016, appellee filed an amended complaint for divorce, a motion for temporary restraining order, a motion for beneficial use of the marital residence, and a motion for temporary orders. In her amended complaint, appellee asserted the parties were married on February 4, 2003 in Columbus, Ohio, and had one child born as issue of the marriage. In her motion for beneficial use of the marital residence, appellee sought an order enjoining appellant from interfering with appellee's exclusive use and occupancy of

the marital residence, which was located on Kenwick Road in Columbus, Ohio ("Kenwick residence"), and requiring appellant to pay the mortgage on the Kenwick residence during the pendency of the action.

{¶ 3} On February 22, 2016, the trial court filed a judgment entry granting appellee's motion for a temporary restraining order. On May 3, 2016, the trial court magistrate filed a temporary order designating appellee temporary residential parent and legal custodian of the parties' child, granting appellee exclusive temporary possession of the Kenwick residence, and requiring appellant to pay appellee child support in the amount of $884.86 per month. The magistrate also ordered appellant to pay and hold appellee harmless on the following obligations: mortgage, taxes, and insurance for the Kenwick residence; automobile insurance for the parties' two vehicles; and monthly cell phone expenses for the parties and the parties' minor child.

{¶ 4} On July 29, 2016, appellant filed a motion for leave to file his answer and counterclaim out of rule, a motion for a temporary restraining order, and a motion to modify temporary orders. On the same date, the trial court granted appellant leave to file his answer and counterclaim. On September 23, 2016, both parties filed affidavits regarding appellant's motion to modify temporary orders.

{¶ 5} On November 22, 2016, the magistrate filed an order modifying appellant's temporary child support obligation. The magistrate also ordered, effective January 15, and ending on November 1, 2016, appellant to pay appellee temporary spousal support in the amount of $100 per month. Finally, effective January 15, 2016, the magistrate found neither party responsible for paying the mortgage, taxes, and insurance on the Kenwick residence due to insufficient funds. On November 30, 2016, appellee filed a motion to set aside the magistrate's November 22, 2016 temporary order as to the issue of temporary spousal support. On January 17, 2017, the trial court held a hearing on appellee's November 30, 2016 motion to set aside.

{¶ 6} On February 27, 2017, the trial court filed an interim order granting in part appellee's motion to set aside the magistrate's November 22, 2016 temporary order. The trial court ordered appellant to pay appellee spousal support in the amount of $575 per month, ordered appellant to sign a waiver allowing appellee to investigate assuming the mortgage on the Kenwick residence, and ordered appellee to actively seek employment and

provide evidence of her job search at trial.  On May 23, 2017, appellant filed a motion for the court to reconsider its February 27, 2017 interim order.

{¶ 7}    On October 5, 2017, appellant filed a motion for exclusive use of the marital residence. On November 17, 2017, the magistrate filed an order denying appellant's October 5, 2017 motion for exclusive use.  On May 7, 2018, appellant filed another motion for exclusive use of the marital residence.

{¶ 8}    Beginning on May 29, 2018, the trial court held proceedings on appellee's complaint and appellant's answer and counterclaim.  On July 16, 2018, appellant filed a motion to modify temporary orders.  On October 18, 2018, appellant filed an affidavit in support of his May 7, and July 16, 2018 motions.  On October 24, 2018, the magistrate denied appellant's May 7, and July 16, 2018 motions.

{¶ 9}    On December 28, 2018, the trial court filed a judgment entry and decree of divorce.[1] The trial court ordered: (1) appellee would have sole legal custody of the parties' minor child, (2) appellant would pay appellee child support in the amount of $620.78 per month, and (3) appellant would pay appellee spousal support in the amount of $800.00 per month for 62 months effective January 1, 2019.  The trial court also divided the parties' assets and liabilities.

## II. Assignments of Error

{¶ 10}   Appellant appeals and assigns the following six errors for our review:

[I.] THE TRIAL COURT ERRED IN ITS CALCULATION OF THE APPELLEE'S INCOME FOR THE PURPOSES OF CHILD SUPPORT AND SPOUSAL SUPPORT.

[II.] THE TRIAL COURT ERRED IN ITS CALCULATION OF THE APPELLANT'S INCOME FOR THE PURPOSES OF CHILD SUPPORT AND SPOUSAL SUPPORT.

[III.] THE TRIAL COURT ERRED IN FINDING THAT BOTH PARTIES HAD SHARED LIVING EXPENSES IN WEIGHING DEVIATION FACTORS FOR CHILD SUPPORT.

[IV.] THE TRIAL COURT ERRED IN ITS DIVISION OF MARITAL ASSETS AND LIABILITIES.

---

[1] On January 24, 2019, after the notice of appeal was filed, the trial court filed an amendment pursuant to Civ.R. 60(A) (regarding clerical mistakes) to the December 28, 2018 judgment entry to reflect adoption of the parenting schedule. The amendment does not substantively affect the assignments of error on appeal.

[V.] THE TRIAL COURT ERRED IN AWARDING DEFENDANT THE MARITAL RESIDENCE CONTINGENT UPON HIS PAYMENT OF SPOUSAL SUPPORT.

[VI.] THE TRIAL COURT ERRED IN ORDERING TEMPORARY SPOUSAL SUPPORT IN THE AMOUNT OF $575.00 PER MONTH AND CHILD SUPPORT IN THE AMOUNT OF $545.99 PER MONTH.

As appellant's assignments of error contain interrelated arguments, we consider appellant's assignments of error together and out of order.

### III. Child Support

{¶ 11} In his first, second, and third assignments of error, appellant challenges the trial court's child support order.

### A. Applicable Law

{¶ 12} Child support orders are governed by R.C. Chapter 3119.[2] " 'The underlying purpose of Ohio's child support legislation * * * is to meet the current needs of the minor child.' " *Habib v. Shikur*, 10th Dist. No. 17AP-735, 2018-Ohio-2955, ¶ 13, quoting *Harbour v. Ridgeway*, 10th Dist. No. 04AP-350, 2005-Ohio-2643, ¶ 34. *See also Bates v. Bates*, 10th Dist. No. 04AP-137, 2005-Ohio-3374, ¶ 21 ("We are mindful that the overriding concern in calculating child support is the best interest of the child for whom support is being awarded."). To achieve this purpose, " 'Ohio has adopted what is known as the "income shares" model for child support—a model that presumes that a child should receive the same proportion of parental income as he or she would have received if the parents lived together.' " *N.W. v. M.W.*, 8th Dist. No. 107503, 2019-Ohio-1775, ¶ 17, quoting *Phelps v. Saffian*, 8th Dist. No. 103549, 2016-Ohio-5514, ¶ 7. Thus, "[t]he starting point for determining the proper amount of child support to be paid is parental income." *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, ¶ 7, citing *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 11.

{¶ 13} R.C. 3119.01, which provides definitions related to the calculation of child support obligations, defines "income" as either: (1) the gross income of a parent employed

---

[2] We note that several statutory sections pertaining to child support, including R.C. 3119.01, 3119.03, 3119.04, 3119.05, 3119.021, 3119.022, 3119.22, and 3119.23 were amended effective March 28, 2019, following the trial court's judgment in this matter. For purposes of this decision, all references to the above statutory provisions are to the version in effect at the time of the trial court's judgment.

to full capacity, or (2) the sum of the gross income of the parent and any potential income of an unemployed or underemployed parent. R.C. 3119.01(C)(5). *See Bruns v. Green*, 10th Dist. No. 18AP-259, 2019-Ohio-2296, ¶ 23. R.C. 3119.01(C)(7) defines "gross income," in pertinent part, as follows:

> [T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; * * * interest; * * * and all other sources of income.

Among other exceptions, gross income does not include "[n]onrecurring or unsustainable income or cash flow items." R.C. 3119.01(C)(7)(e). R.C. 3119.01(C)(8) defines "[n]onrecurring or unsustainable income or cash flow items" as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." By enacting the above definition of "gross income," the General Assembly "intended for an expansive definition of gross income for child support purposes." *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 91, citing *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, ¶ 50 (2d Dist.), and *McQuinn v. McQuinn*, 110 Ohio App.3d 296, 300-01 (12th Dist.1996).

{¶ 14} For a parent who is determined by the court to be voluntarily unemployed or underemployed, R.C. 3119.01(C)(11) defines "potential income" as including the following:

> (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
>
> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in which the parent resides;
>
> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi) The parent's special skills and training;
>
> (vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.

Thus, the imputation of income involves a two-step process. First, the trial court must determine that the parent is voluntarily unemployed or underemployed. *Tonti v. Tonti*, 10th Dist. No. 03AP-494, 2004-Ohio-2529, ¶ 40. Once the court makes such a finding, the court must then determine the amount of income to impute, based upon the factors in R.C. 3119.01(C)(7). *Misra v. Mishra*, 10th Dist. No. 17AP-306, 2018-Ohio-5139, ¶ 17.

{¶ 15} R.C. 3119.01(C)(13) defines "[s]elf-generated income" as the following:

[G]ross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

R.C. 3119.01(C)(9)(a) defines "[o]rdinary and necessary expenses incurred in generating gross receipts" as "actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity." However, "ordinary and necessary expenses incurred in generating gross receipts" do not include, except as specifically provided in R.C. 3119.01(C)(9)(a), "depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3119.01(C)(9)(b).

{¶ 16} R.C. 3119.05, which provides requirements for the computation of child support, provides in pertinent part:

> When a court computes the amount of child support required to be paid under a court child support order * * * all of the following apply:
>
> (A) The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.
>
> (B) The amount of any pre-existing child support obligation of a parent under a child support order and the amount of any court-ordered spousal support actually paid shall be deducted from the gross income of that parent to the extent that payment under the child support order or that payment of the court-ordered spousal support is verified by supporting documentation.
>
> * * *
>
> (H) When the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years.

{¶ 17} R.C. 3119.021 provides for a basic child support schedule, which a court must use in calculating the amount of child support to be paid pursuant to a child support order. *Wolf-Sabatino*, 2014-Ohio-1252, at ¶ 8. Relatedly, R.C. 3119.022 provides a child support computation worksheet, which a court also must use in calculating the amount of child support to be paid. *Id.* The basic child support schedule and computation worksheet apply when the parents' combined gross income is between $6,600 and $150,000 per year. R.C. 3119.021; 3119.04. *See id.*; *Johnson v. Johnson*, 2d Dist. No. 2018-CA-36, 2019-Ohio-1024, ¶ 53. Nevertheless, pursuant to R.C. 3119.22, a trial court may deviate from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. *See Lopez-Ruiz v. Botta*, 10th Dist. No. 11AP-577, 2012-Ohio-718, ¶ 11.

**B. Standard of Review**

{¶ 18} A domestic relations court has broad discretion in a divorce proceeding to determine child support, spousal support, and divisions of marital property. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989); *Turner v. Turner*, 90 Ohio App.3d 161, 164 (10th Dist.1993). Where the basic schedule and worksheet apply, the guideline amount is rebuttably presumed to be the correct amount of child support to be awarded. R.C. 3119.03. *See Wood v. Wood*, 10th Dist. No. 10AP-513, 2011-Ohio-679, ¶ 56. "Despite the discretion a trial court has in child support matters, the court must literally and technically follow the statutory requirements in all material respects." *Wolf-Sabatino*, 2011-Ohio-6819, ¶ 88, citing *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraph two of the syllabus.

{¶ 19} Generally, an appellate court will not disturb a domestic relations court's determination regarding child support absent an abuse of discretion. *Wolf-Sabatino*, 2014-Ohio-1252, ¶ 6. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**C. Analysis**

### 1. Income Averaging

{¶ 20} In his first assignment of error, appellant argues the trial court erred in its calculation of child support by using an average of appellee's income from a period of three years. As previously noted, a trial court may, pursuant to R.C. 3119.05(H), utilize income averaging over a reasonable period of years. *Wolf-Sabatino*, 2011-Ohio-6819, ¶ 97. We have found income averaging to be appropriate "where income is unpredictable or inconsistent." *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 21. *See also Krone v. Krone*, 9th Dist. No. 25450, 2011-Ohio-3196, ¶ 33. " ' "[I]ncome averaging is appropriate when gross income varies due to circumstances and factors beyond the parent's control, no matter what the source may be. It is no more 'fair' to penalize a parent and order much higher child support after an uncommonly good financial year, than it would be to penalize the child for a parent's temporary decline in income." ' " *Maiden v. Maiden*, 11th Dist. No. 2010-L-076, 2011-Ohio-2841, ¶ 17, quoting *In re Kohlhorst*, 3d Dist. No. 2-06-09, 2006-Ohio-6481, ¶ 15, quoting *Scott G.F. v. Nancy W.S.*, 6th Dist. No. H-04-015, 2005-Ohio-2750, ¶ 47. *See Hackett v. Hackett*, 5th Dist. No. 13CAF010002, 2013-Ohio-4684, ¶ 28.

{¶ 21} A trial court must determine whether income averaging is appropriate on a case-by-case basis. *Dodaro v. Dodaro*, 10th Dist. No. 18AP-714, 2019-Ohio-4864, ¶ 38. A trial court's determination to utilize income averaging pursuant to R.C. 3119.05(H) will not be overturned on appeal absent an abuse of discretion. *Banchefsky* at ¶ 18. *See McGuire v. McGuire*, 4th Dist. No. 01CA2789 (Mar. 8, 2002) (finding the trial court abused its discretion by employing income averaging when the evidence established that a party's earning capacity dropped significantly due to a disabling injury).

{¶ 22} In this matter, the trial court found that, based on appellee's records, she earned $10,659 in 2016. The trial court found, however, that appellee was able to work at her current position for "at least 40 hours per week * * * at her regular rate of $9.75 per hour." Therefore, the court found it was "equitable to impute [to] her * * * an annual rate of $16,848 for 2016 (pursuant to Ohio minimum wage at that time) and to $20,280 for 2017 and 2018 (pursuant to the pay documentation [appellee] provided)." (Dec. 28, 2018 Decision at 12, fn. 7.) Based on these findings, the trial court averaged appellee's imputed income from 2016, 2017, and 2018 finding appellee's income to be $19,136 for purposes of calculating child support.

{¶ 23} The trial court found that appellant, who was "self-employed as an over-the-road truck driver," earned $29,549.55 over 31 weeks in 2016, which the trial court used to calculate a weekly average of "roughly $953 per week." Based on its determination that appellant had not provided a complete assessment of his income from 2016, the trial court used the weekly average from 2016 to find that appellant's annual income in 2016 was $49,566.98, or $53,143.63 including his court-ordered child support payments. Next, the court used "the same analysis with respect to [appellant's] 2017 and 2018 statements, for which he earned $53,975.91 in 46 weeks and $28,925.78 in 21 weeks respectively," to find appellant's annual income was $61,016.25 in 2017 and $71,625.74 in 2018. (Dec. 28, 2018 Decision at 12, fn. 8.) Based on these findings, the trial court averaged appellant's annual income from 2016, 2017, and 2018 finding appellant's income to be $61,929.00 for purposes of calculating child support.

{¶ 24} Appellant argues it was inappropriate under R.C. 3119.05(H) to utilize a three-year average for appellee's income because her income "does not fluctuate and is predictable, albeit imputed." (Appellant's Brief at 9.) In *Banchefsky*, the appellant argued

we had "effectively foreclosed income averaging in cases where income is neither unpredictable nor inconsistent." *Banchefsky* at ¶ 21. In dicta, we disagreed, noting a trial court has considerable discretion in calculating income for purposes of determining child support, including the use of income averaging under appropriate circumstances. Nonetheless, because the appellant's income was inconsistent, we held the court did not abuse its discretion in utilizing income averaging to calculate the appellant's income. *Id.* at ¶ 23.

{¶ 25} Here, we cannot find the trial court's utilization of income averaging was inappropriate.[3] The trial court averaged both parties' incomes over the same three-year period, resulting for purposes of calculating child support in a reduction in income for both parties relative to their most recent year's income. Based on the facts and circumstances in this case, we cannot find the trial court abused its discretion by utilizing income averaging. Accordingly, on these grounds, appellant's first assignment of error is overruled in part.

### 2. Inclusion of Spousal Support in Child Support Calculation

{¶ 26} In his first and second assignments of error, appellant argues the trial court erred by failing to consider appellant's court-ordered spousal support payments when performing its child support calculations. Specifically, appellant argues the court failed to include appellant's court-ordered spousal support payments in appellee's annual gross income and failed to deduct court-ordered spousal support payments from appellant's income. As previously noted, pursuant to R.C. 3119.01(C)(7), gross income includes "spousal support actually received." Furthermore, R.C. 3119.05(B) provides that "[t]he amount of any pre-existing child support obligation of a parent under a child support order and the amount of any court-ordered spousal support actually paid shall be deducted from the gross income of that parent to the extent that payment under the child support order or that payment of the court-ordered spousal support is verified by supporting documentation."

{¶ 27} At trial, appellant testified he was currently paying spousal support and submitted a certified record of his payments from the Franklin County Child Support Enforcement Agency ("FCCSEA"). The FCCSEA payment record, which was certified on

---

[3] As the assignment of error does not challenge the trial court's utilization of income averaging for appellant, it is not necessary to address here.

August 28, 2018, reflected appellant made spousal support payments totaling $7,062.56 in 2017 and $6,587.44 in 2018.  (Defendant's Ex. AA.)  In its decision, the trial court found appellant "has paid interim spousal support in the amount of $100 per month pursuant to the Magistrate's Order of November 22, 2016," which was effective beginning January 15, 2016.  (Dec. 28, 2018 Decision at 14.)  Additionally, the trial court noted that it had ordered on February 27, 2017 the spousal support payments to be increased to $575.00 per month effective November 1, 2016.

{¶ 28} Despite the trial court's own findings elsewhere in its decision and the uncontroverted evidence submitted at trial, the trial court failed to consider appellant's spousal support payments in preparing its child support worksheet.  Specifically, the child support worksheet reflects the trial court did not deduct appellant's spousal support payments from his income, nor add any spousal support payments to appellee's income.  Because the trial court failed to consider appellant's spousal support payments in its calculation of the parties' income for purposes of awarding child support, contrary to R.C. 3119.01(C)(7) and 3119.05(B), we find the court committed reversible error. *Wolf-Sabatino*, 2014-Ohio-1252, ¶ 26 (finding the "trial court abused its discretion by failing to deduct the amount of spousal support paid from its calculation of appellant's gross income"); *Kuper v. Halbach*, 10th Dist. No. 09AP-899, 2010-Ohio-3020, ¶ 69; *Warren v. Warren*, 10th Dist. No. 09AP-101, 2009-Ohio-6567, ¶ 30 (finding trial court erred by "fail[ing] to include the spousal support that appellant pays to appellee in calculating appellee's gross income for child support purposes"); *Pelger v. Pelger*, 3d Dist. No. 8-18-36, 2019-Ohio-1280, ¶ 12; *Hagar v. Sabry*, 2d Dist. No. 27967, 2018-Ohio-4230, ¶ 20 (finding trial court erred as a matter of law by failing to account for spousal support award on child support worksheet); *Collins v. Collins*, 5th Dist. No. 2008-CA-00028, 2008-Ohio-4993, ¶ 11.  Accordingly, on these grounds, we sustain appellant's first and second assignments of error in part.

### 3. Self-Employment Income

{¶ 29} In his second assignment of error, appellant asserts the trial court failed to consider his income as self-employment income for purposes of calculating child support. When calculating income for purposes of determining child support, federal and state tax documentation provide a proper starting point, though they are not the sole factor for consideration.  *Dannaher v. Newbold*, 10th Dist. No. 05AP-172, 2007-Ohio-2936, ¶ 12;

*Jajola v. Jajola*, 8th Dist. No. 83141, 2004-Ohio-370, ¶ 14, citing *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390 (12th Dist.).  We have previously stated that "[p]articularly when a parent's income is self-generated, the parent's taxable income may not equal the parent's income as calculated for child support purposes."  *Wood* at ¶ 42, citing *Dannaher* at ¶ 12.  Because the purposes underlying taxation policy and Ohio's child support guidelines are not the same, a trial court cannot "blindly accept all of the expenses deducted on previous tax returns as ordinary and necessary business expenses incurred in generating gross receipts" for purposes of calculating self-generated income pursuant to R.C. 3119.01(C)(13).  *Id.*, citing *Amlin v. Amlin*, 2d Dist. No. 2008 CA 15, 2009-Ohio-3010, ¶ 70.

{¶ 30} The deduction of ordinary and necessary business expenses from gross income " 'recognizes the economic reality that money *legitimately* expended by a self-employed parent to make more money is, in fact, not available for child support purposes.' " (Emphasis sic.)  *Roubanes v. Roubanes*, 10th Dist. No. 13AP-369, 2013-Ohio-5778, ¶ 16, quoting *Helfrich v. Helfrich*, 10th Dist. No. 95APF12-1599 (Sept. 17, 1996), citing *Kamm v. Kamm*, 67 Ohio St.3d 174 (1993).  " 'A party claiming a business expense has the burden of providing suitable documentation to establish the expense.' "  *Dodaro* at ¶ 8, quoting *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 53.  *See Jackowski v. Jackowski*, 10th Dist. No. 13AP-183, 2013-Ohio-5545, ¶ 15.

{¶ 31} Here, as previously noted, the trial court found appellant was "self-employed as an over-the-road truck driver."  (Dec. 28, 2018 Decision at 12, fn. 8.)  Appellant also introduced evidence and testified regarding his work-related expenses.  However, the trial court did not consider appellant's income as self-employment income in the child support worksheet, or otherwise make any determinations regarding appellant's ordinary and necessary expenses.  Because the trial court failed to follow the statutory provisions for self-generated income, pursuant to R.C. 3119.01(C)(9) and (13) and 3119.022, it committed an abuse of discretion.  *See Wolf-Sabatino*, 2011-Ohio-6819, ¶ 88-97.  On remand, the trial court must comply with the statutory requirements, considering any ordinary and

necessary business expenses that appellant has met the burden of establishing.[4] *See Dannaher* at ¶ 137 (remanding matter to the trial court because the court's final entry conflicted with the child support worksheet). Accordingly, on these grounds, we sustain appellant's second assignment of error in part.

### 4. Income Tax Rate

{¶ 32} In his second assignment of error, appellant asserts the trial court erred by failing to utilize the correct local income tax rate for purposes of calculating appellant's child support obligation. Specifically, appellant contends the appropriate local tax rate as a resident of Columbus is 2.5 percent.

{¶ 33} The record reflects both parties submitted proposed child support worksheets, which were admitted into the record at trial. In both proposed child support worksheets, the local tax rate was listed at 2 percent for both appellant and appellee. In the trial court's child support computation worksheet, the local tax rate was listed at 2 percent for both appellant and appellee.[5] In its decision, the trial court found appellant's permanent residence was in Columbus, Ohio. The trial court made no other findings in its decision with regard to the local tax rate.

{¶ 34} Columbus City Code 361.19 provides in pertinent part that "there is hereby levied a tax at the rate of two and one-half (2.5) percent per annum upon the following: (a) All qualifying wages, commissions and other compensation earned or deemed to be received by residents of the city." Furthermore, Columbus City Code 361.19 provides that

---

[4] We note appellant has raised additional issues within this assignment of error, including: (1) the trial court's failure to properly determine appellant's gross receipts and business expenses, and (2) the methodology the trial court employed regarding consideration of child support payments. The trial court appears to have determined appellant's income by averaging the amounts reflected on appellant's settlement statements, records of payments from the company for which appellant performed contracted services, which were entered into the record as exhibits. However, the trial court's judgment entry is unclear regarding what weight, if any, the trial court gave to other evidence in the record, including three years of appellant's federal tax returns, which were also entered into the record. Furthermore, it is unclear what methodology the trial court employed in its consideration of appellant's court-ordered child support payments. Further, as previously discussed, the trial court admitted a certified record of appellant's child support payments from FCCSEA. As we have sustained the assignment of error on other grounds, we decline to address these additional issues. However, on remand, the trial court should give careful consideration to the same and provide sufficient detail of its calculations of appellant's gross income in compliance with the pertinent statutory provisions. Furthermore, we make no determination regarding whether appellant's business expense claims are sufficiently supported.

[5] Exhibit N1 is a collection letter for the city of Columbus income tax from 2012 for a joint return. Appellant's 2017 tax return lists his city as Columbus.

"[t]he tax upon all of the income specified in paragraph[] (a) * * * shall remain in effect for the purpose of filing returns and collection of the tax at the rate of * * * two and one-half (2.5) percent with regard to all income earned on or after October 1, 2009."

{¶ 35} It is unclear from the record, including the parties' proposed child support worksheets and the trial court's child support worksheet, why the parties proposed a local tax rate of 2 percent in their worksheets and why the trial court applied a local tax rate of 2 percent. Taking into consideration the parties proposed 2 percent local tax rate in their worksheets and the fact we have sustained the assignment of error on other grounds, we decline to address this issue. On remand, the trial court should determine the proper local tax rate to be applied.

### 5. Shared Living Expenses

{¶ 36} Finally, in his third assignment of error, appellant asserts the trial court erred in finding he benefitted from sharing living expenses in determining whether to grant a deviation from the child support guidelines. R.C. 3119.23(H) allows for a trial court to consider benefits either parent receives from sharing living expenses with another person in determining whether to grant a deviation pursuant to R.C. 3119.22. A court is not required to deviate from the child support guidelines " 'merely because a deviation would be permissible, or even desirable.' " *Weaver v. Weaver*, 10th Dist. No. 16AP-743, 2017-Ohio-4087, ¶ 13, quoting *Warzala v. Warzala*, 11th Dist. No. 2006-T-0018, 2007-Ohio-2855, ¶ 26. Thus, " 'there is no bright-line test to determine when a deviation is warranted.' " *Id.* at ¶ 11, quoting *Morosko v. Willis*, 9th Dist. No. 21333, 2003-Ohio-3360, ¶ 18. Absent an abuse of discretion, an appellate court will not reverse a trial court's decision regarding deviation from the guideline amount of child support. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997); *Wood* at ¶ 56, citing *Roberts v. Roberts*, 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶ 5.

{¶ 37} Here, the trial court found "the amount calculated pursuant to the basic child support schedule and the applicable worksheet is just, appropriate and serves the best interest of the minor child." (Dec. 28, 2018 Decision at 13.) In reaching this result, the trial court found R.C. 3119.23(H) "applies to both parties" because "[appellee] resides with her

adult (25-year-old) son, and [appellant] resides with roommate(s)." (Dec. 28, 2018 Decision at 12.)[6]

{¶ 38} From our review of the record, there was no testimony at trial regarding any benefit appellant received from sharing living expenses with another person.[7] We have previously stated the " 'crux of R.C. 3119.23(H) is the "benefit" the spouse receives.' " *Lopez-Ruiz* at ¶ 35, quoting *Cameron v. Cameron*, 10th Dist. No. 06AP-793, 2007-Ohio-3994, ¶ 8. In the absence of any evidence regarding benefits appellant receives from sharing living expenses, it is unclear why the trial court applied R.C. 3119.23(H) to appellant. Although a trial court is not required to justify its decision to not order a deviation from the amount provided by the child support guidelines, its stated application of R.C. 3119.23(H) absent competent, credible evidence constitutes an abuse of discretion. *Weaver* at ¶ 14. Accordingly, on these grounds, we sustain appellant's third assignment of error.

## IV. Classification and Division of Marital and Separate Property

{¶ 39} In his fourth and fifth assignments of error, appellant asserts the trial court erred in its classification and division of the parties' marital and separate property in several respects.

## A. Applicable Law

{¶ 40} In divorce proceedings, the trial court must classify property as marital or separate property, determine the value of the property, and divide the marital and separate property equitably between the spouses. R.C. 3105.171(B). *See Fernando v. Fernando*, 10th Dist. No. 16AP-788, 2017-Ohio-9323, ¶ 17; *Hood v. Hood*, 10th Dist. No. 09AP-764, 2010-Ohio-3618, ¶ 13. Marital property is defined in pertinent part as:

> (i) All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage;

---

[6] In finding the factor applied to appellee, the trial court pointed to a letter admitted into evidence in which appellee stated her adult son lived with her and contributed to the household. The trial court pointed to no similar evidence with respect to appellant.

[7] The only mention of appellant's roommate in the record is in appellee's affidavit. *See Hadinger v. Hadinger*, 10th Dist. No. 15AP-09, 2016-Ohio-821, ¶ 35, citing *Brubaker v. Ross*, 10th Dist. No. 00AP–1159 (Apr. 17, 2001) ("The trial court may take judicial notice of the case file and the affidavits submitted to prepare the final order."). There was no testimony at trial regarding appellant's roommate. The parties point us to no evidence of a benefit received by appellant from shared living expenses, and we do not see any such evidence in the record. Furthermore, appellant appears to be the only signer on his apartment's lease agreement.

> (ii) All interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage;
>
> (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]

R.C. 3105.171(A)(3)(a). Separate property is defined in pertinent part as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."  R.C. 3105.171(A)(6)(a)(ii).  Furthermore, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).  *See Hood v. Hood*, 10th Dist. No. 10AP-999, 2011-Ohio-3704, ¶ 13, quoting *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist.1994) (stating that "[t]raceability is 'the focus when determining whether separate property has lost its separate character after being commingled with marital property' ").

{¶ 41} "When parties contest whether an asset is marital or separate property, the asset is presumed marital property unless proven otherwise." *Wolf-Sabatino*, 2011-Ohio-6819, ¶ 11. A party must establish by a preponderance of the evidence that challenged property is separate.  *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 20 (10th Dist.).

{¶ 42} Upon determining what is marital and separate property, a court must "divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B).  A court must distribute a spouse's separate property to that spouse, except when making a distributive award pursuant to R.C. 3105.171(E) or as otherwise provided by R.C. 3105.171.  R.C. 3105.171(D).  *See Chahdi v. Elhassan*, 10th Dist. No. 18AP-674, 2019-Ohio-4472, ¶ 12; *Wilson v. Wilson-Michelakis*, 10th Dist. No. 09AP-81, 2010-Ohio-370, ¶ 26.  "If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D).

{¶ 43} In dividing marital property, the court considers the spouses to have contributed equally to the production and acquisition of marital property and must divide marital property equally, unless the equal division would be inequitable. R.C. 3105.171(C)(1) and (2). *See Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5 (stating that "[i]n any divorce action, the starting point for a trial court's analysis is an equal division of marital assets"). If an equal division would be inequitable, the court must divide the property equitably, considering all relevant factors, including those set forth in R.C. 3105.171(F). R.C. 3105.171(C)(1).

{¶ 44} To ensure an equitable division of marital property, a trial court must take into account both the assets and the liabilities of the spouses. R.C. 3105.171(F)(2). "Thus, the duty to equitably divide the marital property necessarily obligates the trial court to divide the marital debt." *Wood* at ¶ 15. In ordering the division of property, the trial court must, pursuant to R.C. 3105.171(G), make written findings with sufficient detail to support its determination that the marital property has been equitably divided. *Franklin v. Franklin*, 10th Dist. No. 11AP-713, 2012-Ohio-1814, ¶ 5.

**B. Standard of Review**

{¶ 45} "We review a trial court's determination of property as marital or separate under a manifest weight standard, and we will affirm a trial court's determination if it is supported by some competent, credible evidence." *Roush v. Roush*, 10th Dist. No. 15AP-1071, 2017-Ohio-840, ¶ 18, citing *Banchefsky* at ¶ 36. "Once the domestic court factually determines whether the property is marital or separate, the court has broad discretion to make divisions of property." *Hood*, 2011-Ohio-3704, at ¶ 14, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998). We will uphold a trial court's valuation and division of marital property absent an abuse of discretion. *Smoyer v. Smoyer*, 10th Dist. No. 18AP-365, 2019-Ohio-3461, ¶ 24; *Fernando* at ¶ 25, citing *Beagle v. Beagle*, 10th Dist. No. 09AP-353, 2009-Ohio-6570, ¶ 11; *Hood*, 2010-Ohio-3618, at ¶ 13.

**C. Analysis**

**<u>1. Kenwick Residence</u>**

{¶ 46} We begin by considering the arguments raised in appellant's fourth and fifth assignment of error regarding the Kenwick residence. In its decision, the trial court found appellant to be the "sole legal owner" of the Kenwick residence, having purchased the

residence "prior to the date of marriage on/about May 29, 2002 for the price of $165,000." (Dec. 28, 2018 Decision at 4.)  Contrary to appellee's contention that her earnings were used to make a down payment on the Kenwick residence, the United States Housing and Urban Development Settlement Statement offered as evidence for the purchase of the residence reflected no down payment was made and the transaction was financed in its entirety.  Furthermore, the trial court noted appellee failed to have the Kenwick residence appraised despite having been instructed to do so prior to trial and having been afforded two opportunities to present such evidence after trial.  Thus, the court found there was no credible evidence in support of appellee's contentions.

{¶ 47}  Evidence appellant submitted at trial from the Office of the Franklin County Auditor was accepted by the trial court to establish the current fair market value of the residence as $188,600.00.  Additionally, the trial court accepted as credible appellant's testimony that, in 2005, he refinanced the Kenwick residence, liquidating $32,079.23 in equity in order to purchase a vehicle for appellee for approximately $12,000.00 and to pay other marital expenses.  The trial court found that, as of the time of trial, neither party had made any payments on the mortgage since November 2015, and the balance owed by appellant to the mortgagee, Select Portfolio Servicing, Inc., was $212,750.00.  Because neither party had made payments on the mortgage, the trial court found that any remaining alleged equity in the Kenwick residence had been extinguished.

{¶ 48}  In its decision, the trial court awarded appellant the Kenwick residence "free and clear from any claim of [appellee]."  However, the court also ordered that appellee "shall have exclusive use of the marital residence until April 30, 2019, *provided* [appellant] consistently pays the new spousal support award effected herein to provide [appellee] sufficient funds to relocate herself and the minor child."  (Emphasis sic.)  The trial court provided that "[u]pon satisfaction of this condition precedent, [appellee] is ordered to vacate the marital residence on/before April 30, 2019" and ordered appellant to "hold [appellee] harmless from any obligation or liability related to this property."  (Emphasis sic.) (Dec. 28, 2018 Decision at 6.)

{¶ 49} Additionally, the trial court listed the marital assets and liabilities of the parties in a chart and ordered that "each party shall hold his/her allocation of marital assets and/or liabilities * * * free and clear from any claim of the other."  Under "allocation of

marital assets" in the chart, the court allocated the Kenwick residence as appellant's asset, listing the value of the asset as $188,600. (Dec. 28, 2018 Decision at 10.) Under "allocation of marital liabilities" in the chart, the court allocated the mortgage obligation on the Kenwick residence as appellant's sole liability, listing the amount of the liability as $212,750. (Dec. 28, 2018 Decision at 11.)

{¶ 50} First, in his fourth assignment of error, appellant argues there was no competent, credible evidence to support the trial court's classification of the Kenwick residence as marital property. In its decision, the trial court found appellant purchased the Kenwick residence prior to the date of the marriage. Thus, based on this finding and pursuant to R.C. 3105.171(A)(6)(a)(ii), the Kenwick residence is appellant's separate property. Furthermore, the trial court found the value of the Kenwick residence had increased from the original purchase price of $165,000 to $188,600. However, due to the parties' continuing lack of payments on the mortgage, the court found any equity in the property had been extinguished. Based on the mortgage balance of $212,750 as of August 15, 2018, the court found there was a net liability in the amount of $24,150. Thus, pursuant to R.C. 3105.171(A)(3)(a)(iii), there was no appreciation during the marriage on the Kenwick residence as separate property due to the labor, monetary, or in-kind contribution of the spouses. Therefore, in the absence of competent, credible evidence to the contrary, we cannot agree with the trial court's classification of the Kenwick residence as marital property. On remand, the trial court must, consistent with the determination that the Kenwick residence is appellant's separate property, divide the marital and separate property equitably between the spouses. *Hood*, 2010-Ohio-3618, at ¶ 13. Accordingly, on these grounds, we sustain in part appellant's fourth assignment of error.

{¶ 51} Second, in his fifth assignment of error, appellant asserts the trial court erred in making the award of the Kenwick residence to appellant contingent on his payment of spousal support. Having found the Kenwick residence to be appellant's separate property, appellant's arguments related to making the award of the residence contingent on payment of spousal support are moot. Accordingly, we find appellant's fifth assignment of error to be moot.

**2. Security Reserve Account**

{¶ 52} In his fourth assignment of error, appellant asserts the trial court erred with respect to the security reserve account associated with his truck. At trial, appellant, who worked as a truck driver, testified he entered into an equipment lease agreement with Independent Equipment Finance, LLC ("IEF"), for the provision of the truck that he used for work, a 2006 International 8600 Day Cab.

{¶ 53} In the equipment lease agreement, which was admitted into the record, appellant agreed to make, in addition to weekly lease payments, weekly deposits into a maintenance reserve account established and maintained by IEF to provide for maintenance costs associated with the truck. Appellant also agreed to provide $3,500 to establish and maintain a security reserve account, which was held by IEF in support of his obligations under the agreement. At the conclusion of the agreement's term, appellant had the option to purchase the truck from IEF at an agreed amount of $4,000.

{¶ 54} Appellant testified the equipment lease agreement terminated on May 12, 2018, at which time the reserve accounts were applied to the purchase price of the truck. Appellant testified he received no funds from the reserve accounts at the end of the lease term and that the accounts were terminated. Pursuant to court order, appellant provided an appraisal of the truck, in which its value was listed as $4,850.

{¶ 55} In its decision, the trial court allocated the truck to appellant as a marital asset, accepting its appraised value of $4,850. In its findings regarding the parties' financial accounts, the trial court found appellant owned the "Security Reserve Account associated with the lease-to-own option of the 2006 International 8600 Day Cab in the amount of $3,500." (Dec. 28, 2018 Decision at 8.) The trial court allocated the security reserve account to appellant as a marital asset.

{¶ 56} Appellant asserts the trial court erred by listing both the truck and the security reserve account as marital assets. We agree. In allocating the value of the truck to appellant, the trial court properly found the truck was marital property. However, this finding is inconsistent with the trial court's findings regarding the security reserve account. In his uncontroverted testimony at trial, appellant stated the maintenance and security reserve accounts had been terminated and their value applied to the purchase price of the truck. In the absence of competent, credible evidence that funds remained in the security

reserve account, it was error for the trial court to allocate the account to appellant in the amount of $3,500.  Accordingly, on these grounds, we sustain in part appellant's fourth assignment of error.

### 3. Allocation of Alleged Debts Identified by Appellant

{¶ 57}  Next, in his fourth assignment of error, appellant argues the trial court failed to allocate all marital debts.  Specifically, appellant asserts the trial court failed to address an alleged joint tax debt and alleged liabilities to utilities associated with the Kenwick residence that accrued while appellee had exclusive possession of the residence.  Appellant points to evidence in the record, including his own testimony, regarding the nature and existence of such debts.  Additionally, appellant identified the debts in an exhibit, which was admitted at trial, listing his proposed division of marital and separate property.

{¶ 58}  On review, we agree with appellant that the trial court failed to make findings with regard to the alleged debts.  We have previously stated that the "characterization of property as marital or separate is a factual inquiry for the trial court." *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 15.  " '[I]t is well-established that a trial court, particularly a domestic relations court, is in the best position to resolve disputes of fact, and assess the "credibility of witnesses" and the weight to be given to their testimony.' " *Roush* at ¶ 21, quoting *Bates* at ¶ 38.  *See Dodaro* at ¶ 30; *Wehrle v. Wehrle*, 10th Dist. No. 12AP-386, 2013-Ohio-81, ¶ 45.  As the trial court was in the best position to assess the credibility of the testimony and the weight of the evidence, we decline to make findings with regard to appellant's contentions in the first instance on appeal.  *See generally Ocwen Loan Servicing, LLC v. McBenttes*, 9th Dist. No. 29343, 2019-Ohio-4884, ¶ 8-9; *Cook v. ProBuild Holdings, Inc.*, 10th Dist. No. 13AP-430, 2014-Ohio-3518, ¶ 41. On remand, the trial court must consider whether the record supports appellant's contentions with regard to the existence of the alleged debts.  If the trial court finds sufficient evidence supports the existence of the alleged debts, it must classify such debts as marital or separate in nature, determine the amount of the debts, and consider the debts in dividing the marital and separate property equitably between the spouses pursuant to R.C. 3105.171.  Accordingly, on these grounds, we sustain in part appellant's fourth assignment of error.

#### 4. Appellee's Personal Loan and Credit Card Debt

{¶ 59} Finally, in his fourth assignment of error, appellant argues the trial court erred by including a personal loan to appellee as a marital debt. In an exhibit admitted at trial, appellee listed a number of alleged debts which she sought to have classified as marital debts, including a personal loan from Hana Abebe Belete in the amount of $2,000 and credit card debt in the amount of $40. In considering appellee's alleged debt to Hana Abebe Belete, the court noted that appellee "previously testified to obtaining a personal loan in an unspecified amount from her in-court companion, Seifu Begashaw." The court also noted, however, that appellee "provide[d] the Court with no testimony or evidence substantiating the existence or marital nature of this alleged debt." (Dec. 28, 2018 Decision at 9-10, fn. 6.) With regard to the alleged credit card debt, the court noted that "while this 'debt' appears on Plaintiff's Exhibit 12, the Court received no testimony or evidence substantiating the existence or marital nature of this alleged debt." (Dec. 28, 2018 Decision at 9, fn. 5.)

{¶ 60} In the assets and liabilities chart, the court listed appellee's "Hana Abebe Belete personal loan" under "allocation of marital liabilities," allocating the entire $2,000 liability to appellee. (Dec. 28, 2018 Decision at 10.) The court did not list appellee's credit card debt. In total, the trial court found appellee had assets in the amount of $15,237 and liabilities in the amount of $4,064, including the alleged $2,000 personal loan, for a total net distribution of $11,173. The trial court found appellant had assets in the amount of $198,663 and liabilities in the amount of $212,750, for a negative total net distribution of $14,087.

{¶ 61} Appellant argues the trial court improperly included the alleged personal loan and credit card debt despite the lack of testimony regarding the nature or existence of such debts. First, after a thorough review of the record, we are unable to find any evidence in support of the personal loan from Hana Abebe Belete outside of appellee's exhibit listing the proposed allocation of alleged debts. As noted by the trial court and discussed below, appellee testified regarding a loan she received from Seifu Begashaw. However, there is no evidence connecting such loan to the loan listed as "Hana Abebe Belete personal loan" in the trial court's allocation of marital liabilities. (Dec. 28, 2018 Decision at 10.) Therefore, in the absence of competent, credible evidence establishing the existence and marital nature of the alleged personal loan from Hana Abebe Belete, we find the trial court abused

its discretion by including such loan in the amount of $2,000 in its allocation of marital liabilities. *Warren* at ¶ 15 (finding that "[a] trial court's assignment of an asset's value must be based upon competent, credible evidence," meaning "evidence that is both competent, credible evidence of value and a rational basis upon which to establish the value"); *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, ¶ 51 (6th Dist.) (finding reversible error where no competent, credible evidence supported trial court's conclusion that real estate was marital property); *Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, ¶ 35 (9th Dist.) (finding trial court erred in determining vehicle to be marital property without competent, credible evidence).

{¶ 62} Next, with regard to the alleged credit card debt, there is no evidence the trial court included such debt in its allocation of marital liabilities. Therefore, we find no error with regard to the credit card debt. Accordingly, on these grounds, we sustain in part and overrule in part appellant's fourth assignment of error.

## V. Temporary Orders

{¶ 63} Finally, in his sixth assignment of error, appellant asserts the trial court erred in several respects with regard to its February 27, 2017 order providing for temporary spousal support and child support. First, appellant asserts the February 27, 2017 order constituted an abuse of discretion because the court failed to consider appellant's spousal support payments when calculating the child support obligation.

{¶ 64} In the November 22, 2016 order, the magistrate directed, effective January 15, 2016, appellant to pay temporary child support in the amount of $596.64 per month, cash medical support in the amount of $82.50 per month, and temporary spousal support in the amount of $100.00 per month.[8] In making child support calculations during this period from January 15 until November 1, 2016, the magistrate listed appellee as having no income. In the same order, the magistrate directed, effective November 1, 2016, appellant to pay ongoing temporary child support in the amount of $545.99 per month, cash medical support in the amount of $112.00 per month, and removed appellant's temporary spousal support obligation. In making child support calculations for the period

---

[8] We note the magistrate found that neither party had accessible private health insurance available to them at a reasonable cost. Nevertheless, the magistrate also provided additional calculations in the event private health insurance was in effect after the effective date of the order.

beginning November 1, 2016, the magistrate imputed income to appellee in the amount of $13,650.00 per year.

{¶ 65} In its February 27, 2017 order, the trial court granted in part appellee's motion to set aside the magistrate's November 22, 2016 order. The trial court ordered appellant, effective November 1, 2016, to pay temporary spousal support in the amount of $575 per month. On May 23, 2017, appellant filed a motion for reconsideration of the court's February 27, 2017 order, in which he argued that appellee had income in 2016. On October 5, 2017, and May 7, 2018, appellant filed motions for exclusive use of the Kenwick residence. On November 17, 2017, the magistrate filed an order denying appellant's October 5, 2017 motion for exclusive use. In his July 16, 2018 motion to modify temporary orders, appellant argued appellee should be required to pay the mortgage on the Kenwick residence because appellant had been approved for a loan modification, appellee had full-time employment, and appellee had exclusive use of the residence. On October 18, 2018, appellant filed an affidavit in support of his motion to modify temporary orders. On October 24, 2018, the magistrate filed an order denying appellant's May 7, and July 16, 2018 motions.

{¶ 66} Civ.R. 75(N) provides for a trial court or magistrate to grant a temporary order providing spousal support and child support during the pendency of the action for divorce. Upon the written request of a party, the trial court must hold a hearing to determine whether to modify the order. Civ.R. 75(N)(2). Importantly, appellant does not assert he raised before the trial court the issue of including spousal support payments in the trial court's calculation of temporary child support in his May 23, 2017 motion for reconsideration, his July 16, 2018 motion to modify temporary orders, or otherwise. A party that fails to seek modification of a temporary order "cannot raise any issue which could have been addressed in that order at the final divorce hearing." *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 14. *See Chattree v. Chattree*, 8th Dist. No. 99337, 2014-Ohio-489, ¶ 64, quoting *Thorp v. Thorp*, 11th Dist. No. 2010-T-0038, 2011-Ohio-1015, ¶ 39 (stating that " '[w]hen a party is able to fully litigate the issues regarding temporary support orders during the final divorce trial, the trial may constitute the Civ.R. 75(N)(2) hearing on temporary support orders' "); *Biscello v. Biscello*, 10th Dist. No. 99AP-

172 (May 4, 2000). Therefore, we decline to find the trial court abused its discretion with regard to the calculation of child support in its February 27, 2017 order.

{¶ 67} Appellant also contends the trial court abused its discretion because it issued its temporary spousal support award after appellee "misrepresented her employment status" at the hearing on January 17, 2017. (Appellant's Brief at 28.) R.C. 3105.18(B) provides that "[d]uring the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." However, the statute "does not provide, nor have courts provided, a specific methodology in determining when an award of temporary spousal support is reasonable and how the amount of that award is to be decided." *Ward v. Ward*, 10th Dist. No. 99AP-66 (May 4, 2000). *See Bolender v. Bolender*, 4th Dist. No. 13CA984, 2014-Ohio-2136, ¶ 27; *Deacon v. Deacon*, 8th Dist. No. 91609, 2009-Ohio-2491, ¶ 49. "An award of temporary spousal support is reviewed to determine whether the trial court abused its discretion." *Ward*, citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 665 (8th Dist.1994).

{¶ 68} In her September 23, 2016 supplemental affidavit, appellee stated she worked briefly as a maid in 2015, but had not had steady employment since 2003. She also stated that within one month she planned to start working at a daycare for 25 to 30 hours per week at the rate of $8.75 per hour. Therefore, appellee "respectfully request[ed] that the Court not impute me at more than $13,650.00 for purposes of temporary orders." (Supp. Aff. at 4.) At the January 17, 2017 hearing, appellee's counsel represented to the court that appellee was unemployed because the daycare had not hired her yet.

{¶ 69} In her 2016 tax return, which was submitted into evidence at trial, appellee's gross income was listed as $10,659. Appellee also testified at trial that in 2016 she was self-employed cleaning houses with a friend. Appellee testified she used the money she earned from cleaning to repay a loan from Seifu Begashaw that she received because she was having "financial problems." (May 29, 2018 Tr. Vol. I at 122.) Although the record is clear that appellee received income in 2016, it is unclear as to whether appellee misrepresented her employment status at the time of the January 17, 2017 hearing. Therefore, we decline to find the trial court abused its discretion in ordering temporary spousal support. *See generally Stafford v. Stafford*, 10th Dist. No. 19AP-50, 2019-Ohio-3742, ¶ 9 (applying abuse of discretion standard in reviewing spousal support order).

{¶ 70} Finally, appellant requests the court reconsider its temporary child support and spousal support order because appellee resided in the Kenwick residence without making mortgage payments during the pendency of the proceedings before the trial court. The record reflects that neither party made mortgage payments after November 2015, although appellant had been previously ordered to do so until such obligation was set aside by the magistrate's November 22, 2016 order, in which the magistrate found that neither party had sufficient funds to make mortgage payments. Based on the foregoing and in consideration of the evidence in the record, we decline to find the trial court's decision to allow appellee to remain in the Kenwick residence resulted in an abuse of discretion in its calculation of temporary child support and spousal support.

{¶ 71} Accordingly, we overrule appellant's sixth assignment of error.

## VI. Conclusion

{¶ 72} Having sustained in part and overruled in part the first and fourth assignments of error, sustained the second and third assignments of error, rendered moot the fifth assignment of error, and overruled the sixth assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

SADLER, P.J., and BEATTY BLUNT, J., concur.